■ In the Matter of ACME FOLDING BOX, INC., Appellant, v TAX COMMISSION OF CITY OF NEW YORK et al., Respondents. — In a consolidated proceeding pursuant to article 7 of the Real Property Tax Law, to review assessments (for purposes of taxation) applying to certain real property, for the tax years 1975/1976 through 1979/1980, petitioner appeals from a judgment of the Supreme Court, Kings County (Ventiera, R.), dated October 24, 1980, which reduced the assessments for the tax years 1975/1976 through 1978/1979 and confirmed the assessment for the year 1979/1980, on the ground that further reductions should have been granted. Judgment modified, on the law and the facts, by reducing the assessments for each of the tax years in issue to $580,000 (land $110,000; building $470,000). As so modified, judgment affirmed, with-

out costs or disbursements. The subject property is improved with a two-story and basement industrial building located at 1495 Herkimer Street in the East New York section of Brooklyn. The building was erected in 1923 and was described by the City of New York's expert as a "garage-type building"; in his opinion it had originally been constructed for garage purposes. Petitioner acquired the premises in 1957 for $736,250, and, by demolishing walls proceeded to adapt it for its own use. Since the date of acquisition petitioner apparently has been the sole occupant of all three levels of the building. Petitioner's expert described the East New York area as "a neighborhood that is on the verge of total economic extinction". It is an area that was badly damaged by the fires of the blackout of 1977, and although once 100% built up with frame houses, medium density multifamily dwellings and viable industrial structures, at least 15-25% of the land is now vacant and an additional 30-50% of the land is covered with burnt-out or abandoned buildings. The city's expert reported that the "area properties have mostly been taken in condemnations this past decade in many of the manufacturing zones. The neighborhood is low income population primarily of minority groups". Petitioner's appraisal expert reported that "the property was substantially broken into and vandalized after the blackout in '77 * * * on the second floor, all of the windows have been broken. They've been replaced by plastic sheeting". He reported that the reputation of East New York in the real estate market is "extremely poor". The assessments, Special Term's findings and the experts' appraisal values were as follows:

ASSESSMENTS

| Year | Land | Building | Total |
|------|------|----------|-------|
| 1975/1976 | $125,000 | $585,000 | $710,000 |
| 1976/1977 | 125,000 | 585,000 | 710,000 |
| 1977/1978 | 110,000 | 585,000 | 695,000 |
| 1978/1979 | 110,000 | 585,000 | 695,000 |
| 1979/1980 | 110,000 | 565,000 | 675,000 |

SPECIAL TERM

| Year | Land | Building | Total |
|------|------|----------|-------|
| 1975/1976 | $125,000 | $555,000 | $680,000 |
| 1976/1977 | 125,000 | 555,000 | 680,000 |
| 1977/1978 | 110,000 | 570,000 | 680,000 |
| 1978/1979 | 110,000 | 570,000 | 680,000 |
| 1979/1980 | 110,000 | 565,000 | 675,000 |

APPRAISERS' VALUES

| Year | Land | Building | Total |
|------|------|----------|-------|
| 1975/1976-1979/1980 | $261,750 | $442,550 | $704,300 |

| Year | Land | Building | Total |
|------|------|----------|-------|
| 1975/1976-1977/1978 | $ 66,000 | $286,000 | $352,000 |
| 1978/1979-1979/1980 | 66,000 | 212,000 | 278,000. |

Both experts utilized and relied upon the capitalization of income method to derive over-all value, and upon a market study to derive the land value element of that valuation. Since the building was owner occupied for the tax years in issue, there is no rental history. Accordingly, both experts looked to the market (rental "comparables") to derive an estimated annual gross income for the subject property (petitioner: $162,300; city: $148,000). Both deducted

estimated expenses (those of petitioner largely based upon actual expenses), to derive net income to be capitalized. Petitioner's expert's estimates of yearly expenses were $79,400 for 1974-1976 and $90,600 for 1977-1978. The city expert's estimate was $21,934 for each year. The primary reason for the large discrepancy appears to be in the difference between multitenant and single tenant occupancy. According to petitioner's expert, the subject property would have to be rented to multiple tenants on a "gross" basis, i.e., with the landlord paying most of the operating costs. The city's expert, however, appraised the property as if it were leased to a single tenant. This would mean, in essence, that the tenant and not the landlord would bear most of the operating costs. Petitioner's expert explained his capitalization rates and reported them as follows:

| "Years | Cap Rate | Annualized Tax Rates | | Overall Rate |
|---|---|---|---|---|
| 1975/76-1977/78 | .14 | .0857 | = | .2357 |
| 1978/79-1979/80 | .16 | .0875 | = | .2575 |

| "Years | Net Income/Overall Rate | | = | |
|---|---|---|---|---|
| 1975/76-1977/78 | $82,900 | .2357 | = | $351,718 Say $352,000 |
| 1978/79 1979/80 | $71,700 | .2575 | = | $278,447 Say $278,000". |

The city's expert capitalized his $126,066 net income figure at 17.9%, consisting of the rounded sum of an average five-year tax rate of 8.646% and a capitalization rate of 9.25%. His rate was otherwise unexplained. Special Term rejected the multitenant theory and adopted the single tenant hypothesis of the rental value ($148,000) reported by the city expert. It found that the city's expert's estimate of rental income for the subject property "is more realistic as to what the rental value to a single tenant should be for the property". However, the court differed with the city's expert's estimate for expenses and found that $267,478 would be a proper estimate. Subtracting $26,478 from its income estimate of $148,000, the court derived a net of $121,522 for the subject, and capitalized it at 17.90%, the capitalization factor of the city appraiser. The court thus derived a rounded market value of $680,000. We find that the attorneys for the respective parties diligently and thoroughly elicited the evidence on all of the issues, that this evidence was sharply conflicting, that petitioner did not establish its multitenant gross lease thesis, and that Special Term's findings on the issues of multiple versus single tenancy occupancy, estimated income and estimated expenses were amply supported by and were within the range of the evidence and should not be disturbed. However, on the entire record and in view of the area, the particular property, the nature, condition and age of the improvement, Special Term's capitalization factor of 17.9% (the city capitalization factor consisting of a five-year average tax rate of 8.646% and capitalization of 9.25%) was unrealistic, and not adequately supported by the evidence. Petitioner should be allowed 10% as a rate of return on investment and 2.25% for recapture of investment. With respect to the latter, we agree with petitioner's contention that in view of the age of the subject building and the deteriorated neighborhood within which it is located, a future building life of 40 years, at the most, can be inferred from the evidence. This results in 2.5% as a recapture rate, from which we deduct .25% for the land portion of the valuation, resulting in a 2.25% recapture rate to be added to the 10% rate of return (see *Matter of Willowbrook Assoc. v*

*Finance Administrator of City of N.Y.,* 77 AD2d 901). Accordingly, on the particular facts of this case, the 17.9% total capitalization factor of Special Term should be modified to 20.896% as follows:

| | | | |
|---|---|---|---|
| (1) | Return on investment | 10% | |
| (2) | Recapture of investment | 2.25% | |
| | Subtotal | 12.25% | |
| (3) | Five-year average tax rate . | | 8.646% |
| | Total capitalization factor | | 20.896%. |

Applying this 20.896% capitalization factor to the net income found by Special Term, we conclude that the rounded value for each year in issue is $580,000 (land $110,000; building $470,000), and that the assessments should be reduced to those figures. Bracken, J. P., Brown, Niehoff and Rubin, JJ., concur.